UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD OLSON, Plaintiff, | ) | |
| v. | ) | No. 4:08CV1407TIA |
| MICHAEL ASTRUE, Commissioner of Social Security, Defendant. | ) | |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## I. Procedural History

On June 30, 2006, Claimant filed an application for Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr. 72-74).[1] In the Disability Report Adult filed in conjunction with the application, Claimant stated that his disability began on March 2, 2003, due to a fractured pelvis and hip separated from the socket after a fall from a deer stand in 2000, constant pain, and depression. (Tr. 109). On initial consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 47-51). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). On March 5, 2008, a hearing was held before an ALJ. (Tr. 21-44). Claimant testified and was represented by counsel. (Id.). Pat

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer (Docket No. 7/filed November 17, 2008).

Merra, a branch manager of a construction equipment company, also testified at the hearing. (Tr. 42-44). Thereafter, on February 18, 2008, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 6-16). On July 28, 2008, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision. (Tr. 1-3). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Hearing on February 6, 2008

#### 1. Claimant's Testimony

At the hearing on February 6, 2008, Claimant testified in response to questions posed by the ALJ. (Tr. 24-42). At the time of the hearing, Claimant was fifty-five years of age and his date of birth is December 20, 1952. (Tr. 24). Claimant testified that he is 6'2" tall and weighs about 200 pounds. (Tr. 24). Claimant is right-handed and lives with his mother in a house. (Tr. 24-25). Claimant attended high school and completed two years of college. (Tr. 25).

Claimant last worked in February, 2003, as a regional sales manager for thirteen years. (Tr. 25). Claimant testified that he left his job because he was laid off. (Tr. 26). Claimant testified that he believed his physical problems caused him to be laid off inasmuch he could not sit in a car. (Tr. 26-27). Before that position, Claimant worked for ten years as a regional sales manager for another company selling big construction equipment. (Tr. 26).

Claimant testified that his severe lower back pain, severe pain in his groin, and sciatic nerve pain would preclude him from being able to work. (Tr. 26).

Claimant was injured in an accident in 2000 when a deer stand fell out of a tree and he fractured his pelvis in thirteen place and his hip came out of the socket. (Tr. 28-29). Dr. Metzler

started treating Claimant after the accident. (Tr. 29). Claimant has experienced severe pain since the accident. (Tr. 29). After treating Claimant with cortisone shots, Dr. Metzler referred him to a back surgeon for treatment but after examining Claimant, the doctor determined there was nothing wrong with his spine. (Tr. 30-31). Claimant decided to seek treatment from a chiropractor but he received no relief from the pain. (Tr. 31). Claimant sought out treatment from a physical therapist based on a friend's recommendation. (Tr. 31-32). The physical therapist treated Claimant twice a week and started Claimant on a regimen of exercises. (Tr. 32). After a period of treatment, Claimant experienced severe, shooting pain to the point that the physical therapist discharged Claimant from treatment because he could not help him. (Tr. 32-33). Claimant testified that Dr. Rouse, his regular physician, treated him for kidney stones a couple of years earlier, and he returned for treatment complaining of kidney stone pain.[2] (Tr. 33-34). Claimant testified that Dr. Rouse attributed the cause of his pain from the accident. (Tr. 34). Claimant does not take any medications. (Tr. 41).

Claimant testified that he experiences constant lower back pain. (Tr. 33). Walking sometimes triggers the pain. (Tr. 34). The sciatic nerve sporadically bothers Claimant when he sits. (Tr. 34). Claimant experiences pain approximately every ninety minutes. (Tr. 35). To alleviate the pain, Claimant repositions and elevates his leg. (Tr. 36). Claimant spends most of the day in a reclining chair with his leg elevated. (Tr. 36). After his father was diagnosed with

[2]The undersigned notes that there are no medical records in the transcript of any treatment notes or evaluation by Dr. Rouse. Nonetheless, Claimant outlined treatment by Dr. Rouse in his hearing testimony. Claimant also listed Dr. Rouse as his internist for eight years in the Adult Disability Report. *See* Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility). The record before the undersigned is devoid of any records from Dr. Rouse.

leukemia, Claimant stayed with his parents three or four days a week but he moved into their house in October 2006. (Tr. 40).

Claimant has not applied for any pensions from his previous employers. (Tr. 41).

Claimant sleeps three to four hours a night but then wakes up and cannot fall back to sleep. (Tr. 35). Claimant drives his mother to the grocery store once or twice a week his pain permitting. (Tr. 36). Claimant testified that he can drive short distances but the longer he sits in a vehicle, the severity of the pain increases. (Tr. 36). Claimant testified that he never bends and putting on socks and shoes causes pain and so he wears slip-on shoes. (Tr. 38). Claimant can no longer fish or play golf. (Tr. 38-39). Claimant helps his mother by emptying the dishwasher and assisting with the cooking. (Tr. 39). Claimant vacuums for five to ten minutes. (Tr. 39).

**2. Testimony of Pat Merra**

Pat Merra, a branch manager of a construction equipment company, testified that he has known Claimant for eight years and he sees Claimant every six weeks. (Tr. 42). Mr. Merra has observed how Claimant experiences difficulty in sitting and getting up from a chair and makes grunting noises on an hourly basis. (Tr. 43). Mr. Merra explained how the sales line of work requires getting in and out of cars several times a day and driving for long periods of time. (Tr. 43). Mr. Merra testified that Claimant's pain has progressively increased because Claimant grunts with greater frequency and discusses his pain more often. (Tr. 44).

**3. Forms Completed by Claimant**

In the Adult Disability Report, Claimant reported his symptoms first bothering him on November 12, 2000 and he became unable to work on March 2, 2003. (Tr. 109). Claimant indicated that he continued working after his injuries but his job duties and hours remained

unchanged. Claimant indicated that he was released from his position on March 2, 2003 due to his pain and disagreement with the owner. (Tr. 109). Claimant described his job duties as a retail sales manager as requiring him to walk and to stand for one hour, and to sit for ten hours. (Tr. 110). Claimant further reported frequently lifting three pounds during the workday. (Tr. 111). Claimant indicated that he has never been seen by a doctor for emotional or mental problems that limit his ability to work. (Tr. 111).

**4. Explanation of Determination**

On September 18, 2006, M. Delgado, a disability examiner, noted that Claimant is alleging disability due to a fractured pelvis, hip separated from socket, constant pain, and depression. (Tr. 46). The examiner noted that there is no medical diagnosis to support the allegation of depression. Because Claimant described his past job as an office manager as less than sedentary work, the examiner opined that Claimant can return to his past work. (Tr. 46).

**III. Medical Records**

In a follow-up visit on June 17, 2003, Dr. Metzler noted that Claimant has not returned for treatment for almost eighteen months. (Tr. 141). Claimant reported since his last visit he has continued to experience back and right lateral thigh and leg pain and any type of activity triggers the pain. Claimant experiences some relief from the pain by sitting. Claimant reported not returning for treatment due to frustration over scheduling an appointment. Examination revealed no atrophy and full lower extremity strength. Dr. Metzler noted that Claimant has a history of right acetabular fractures, status post repair, L4-5 and L5-S1 disc bulges, and right L5 versus S1 radicular pain versus sciatic nerve injury. Dr. Metzler recommended that Claimant have an updated magnetic resonance scan of his lumbosacral spine and an EMG/nerve conduction study

and prescribed Neurontin 300 mg. (Tr. 141).

On July 1, 2003, Dr. Joseph Metzler conducted an EMG/nerve conduction study to evaluate Claimant for sciatic nerve injury versus L5-S1 radiculopathy. (Tr. 134-40). After completion of the study, Dr. Metzler found no electrodiagnostic evidence of right lumbar radiculopathy or sciatic nerve injury. (Tr. 134). Dr. Metzler noted that Claimant is scheduled for a right L5 and S1 elective nerve root block. (Tr. 134).

On September 11, 2006, on referral by Dr. Metzler, Dr. Jack Tippett evaluated Claimant's low back pain, right leg pain, and right groin pain. (Tr. 146). Claimant reported pain throughout the low back region. (Tr. 146). Dr. Tippett noted that Claimant has a mild to moderate limp on his right side but he does not require a cane or crutch to ambulate. (Tr. 146-47). Examination revealed Claimant can squat down with some difficulty and bending forward causes pain. (Tr. 147). Claimant was able to get on and off the examining table unassisted . Examination of his back revealed tenderness throughout the lower back region, mainly on the right side. Examination of the right lower extremity showed some atrophy and his right hip mildly restricted. Dr. Tippett listed advanced degenerative changes in his right hip in his clinical impressions. (Tr. 147). The x-ray showed advanced degenerative and hypertrophic changes throughout Claimant's right hip joint with healed acetabular fracture and extensive internal fixation devices. (Tr. 149).

In the Psychiatric Review Technique completed by A. Kresheck on September 18, 2006, on behalf of Disability Determinations, the medical consultant found that Claimant does not have any medically determinable impairment. (Tr. 152-62). The Consultant's Notes section included the following:

Clmt is a 54 yo male with 14 yrs of education. Clmt last worked in 3/03 as a sales

> manager. Clmt is alleging disability due to depression; however, a psych MDI is not established in available MER to support this allegation. Clmt is not taking any psychotropic medications nor has he been hospitalized for depression. At CE clmt was found to be alert and oriented. Clmt was pleasant and cooperative during exam. Clmt's report of ADLs describe significant physical limitations, but not psych. He said "I have no mental problems" and is not limited in basic ADLs from psych perspective. No psych MDI established in available MER.

(Tr. 162).

In the Physical Residual Functional Capacity Assessment ("PRFCA") completed on September 18, 2006, M. Delgado, a medical consultant, listed healed fracture of right pelvis with internal fixation as Claimant's primary diagnosis and degenerative changes right hip as his secondary diagnosis. (Tr. 163-68). The consultant indicated that Claimant's exertional limitations included that Claimant could occasionally lift ten pounds; could frequently lift less than ten pounds; could stand or walk a total of at least two hours in an eight-hour work day; could sit about six hours in an eight-hour work day; and was limited in pushing and pulling in lower extremities. (Tr. 164). The consultant noted that Claimant had open reduction, internal fixation to repair a fractured hip, and Claimant continues to have pain. At the consultative examination, the doctor observed Claimant to walk with a mild to moderate limp on his right side and his range of motion of his right hip to be mildly restricted. X-rays showed advanced degenerative changes in his right hip. (Tr. 164). The consultant further indicated that Claimant could occasionally kneel, and frequently climb ramp/stairs, crouch, and stoop and never balance or crawl. (Tr. 166). The consultant found Claimant not to have any manipulative, visual, or communicative limitations to be established. (Tr. 166-67). With respect to environmental limitations, the consultant determined that Claimant should avoid fumes, odors, and dusts, vibrations, and avoid climbing

heights. (Tr. 167).

In the initial evaluation for physical therapy on February 12, 2007, the therapist determined that Claimant should have therapy two times a week for four to eight weeks. (Tr. 173-76). Claimant returned for treatment for six sessions. (Tr. 181). In the discharge summary dated March 30, 2007, the physical therapist reported that Claimant responded poor to physical therapy intervention and he continued to exhibit pain in his right hip and back and no longer responded and discharged Claimant from active physical therapy treatment with instruction in an appropriate home exercise program. (Tr. 183).

In a letter addressed "To whom it may concern:" written by Raymond Booth, R.N., C.R.N.A., on February 4, 2008, the letter states:

> Ron Olson has been a close friend and neighbor for many years. It is very unfortunate to observe the extreme physical and emotional pain that this individual endures twenty-four hours a day with no relief. Ron is disabled.
>
> A severe pelvic fracture has resulted in permanent medically documented nerve and skeletal dislocations. His gait is unsteady and requires support, especially with walking and accommodating stairs. The associated pain is visibly noted in facial expressions and guarded hesitation with bodily movement. Ron's willingness to do simple tasks, both inside and outside of the home, requires a constant mindset that any bodily movement will produce discomfort and pain. To date, there has been no successful medical treatment.
>
> I have been in the nursing profession for thirty-one years, and have excellent diagnostic abilities. Again, Ron Olson is disabled. Any help of financial support that is available should be granted to this individual. He is not able to be physically employed.

(Tr. 131).[3]

---

[3]A physician's opinion that a claimant is "disabled" or "unable to work" does not carry "any special significance," 20 C.F.R. § 416.927(e)(1), (3), because it invades the province of the Commissioner to make the ultimate determination of disability. House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007).

## IV. The ALJ's Decision

The ALJ found that Claimant has not engaged in substantial gainful activity since March 2, 2003, the alleged onset of disability, and he meets the insured status requirements through December 31, 2008. (Tr. 11). The ALJ found that the medical evidence establishes that Claimant has the severe impairments of healed fractures of the right pelvis with internal fixation and advanced degenerative changes in the right hip, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 11). The ALJ found that Claimant's allegations of disabling symptoms precluding all substantial gainful activity are not consistent with the evidence as a whole and are not persuasive. The ALJ found that Claimant has the residual functional capacity to perform the full range of sedentary work. (Tr. 11). The ALJ determined that Claimant is able to perform his past relevant work as a retail sales manager inasmuch as such work does not require the performance of work-related activities precluded by his RFC. (Tr. 15). The ALJ concluded that Claimant was not under a disability from March 2, 2003, through the date of the decision. (Tr. 16).

## V. Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also

Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

At the outset, the undersigned notes that the fact that although Claimant did allege depression in his application for disability benefits is significant, no evidence of depression was later developed. In his application for disability benefits, Claimant alleged disability due to a fractured pelvis and hip separated from the socket after a fall from a deer stand in 2000, constant pain, and depression. The ALJ found Claimant has the severe impairments of healed fractures of the right pelvis with internal fixation and advanced degenerative changes in the right hip, and concluded that the impairments, alone or in combination, are not of listing level. The undersigned notes that Claimant did not testify at the hearing that his depression affects his ability to function, and the ALJ fulfilled his duty of investigating this claim. The undersigned concludes that the ALJ did not err in discounting the diagnosis of depression/anxiety. See Kirby v. Astrue, 500 F.3d 705, 707-09 (8th Cir. 2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basic work activities; claimant bears the burden of establishing impairment's severity). The ALJ noted in his decision how "the medical evidence does not support this diagnosis. There is no evidence of treatment for depression.... Proof of a disabling impairment must be supported by at least some objective medical evidence." (Tr. 15). Likewise, the ALJ noted how Claimant in his Activities of Daily Living report, he indicated that he did not have any mental problems.

The undersigned finds the record is devoid of any evidence supporting Claimant's contention that his depression is disabling. First, Claimant presented no medical evidence substantiating this claim. Claimant never alleged any limitations in function as a result of his depression in his application for benefits or during the hearing. Indeed, the medical evidence is

devoid of any support. Claimant failed to provide any medical records showing any treatment for depression. The record not only fails to contain substantial evidence to support such a claim, but it contains virtually no evidence to support Claimant's argument. The ALJ is under "no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)). Accordingly, this claim is without merit. Claimant did not testify at the hearing that this condition affects his ability to function, and the ALJ fulfilled his duty of investigating this claim. The ALJ is under "no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)). Accordingly, this claim is without merit.

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly formulate his residual functional capacity. Next Claimant contends that the ALJ erred in failing to properly analyze the requirements of his past relevant work.

With regard to the ALJ's determination of Claimant's RFC, the undersigned finds that the ALJ properly assessed the medical evidence and Claimant's credibility. "The ALJ must determine a claimant's RFC based on all of the relevant evidence." Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004). It is the responsibility of the ALJ to assess a claimant's RFC based on all the evidence, including medical records, the opinions of treating and examining physicians, as well as the claimant's own statements regarding his limitations. McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003); McKinney v. Apfel, 228 F.3d 860 863 (8th Cir. 2000) (citing Anderson v.

Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individuals's strengths and weaknesses." SSR 85-16. SSR 85-16 further delineates that "consideration should be given to ... the [q]uality of daily activities ... [and the a]bility to sustain activities, interests, and relate to others *over a period of time*" and that the "frequency, appropriateness, and independence of the activities must also be considered." SSR 85-16.

An ALJ must begin his assessment of a claimant's RFC with an evaluation of the credibility of the claimant and assessing the claimant's credibility is primarily the ALJ's function. See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is primarily a matter for the ALJ to decide); Pearsall, 274 F.3d at 1218. In making a credibility determination, an ALJ may discount subjective complaints if they are inconsistent with the record as a whole. Holstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). In Polaski, the Eighth Circuit set out factors for an ALJ to consider when determining the credibility of a claimant's subjective complaints. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190. 1193 (8th Cir. 1995). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the

claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). An ALJ is only required to consider impairments he finds credible and supported by substantial evidence in determining a claimant's RFC. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluations of the entire record." )

The ALJ's determination of Claimant's RFC is supported by substantial evidence in the record. Likewise, the ALJ noted several inconsistencies within the record, and he pointed out the lack of supporting objective medical evidence. The ALJ opined that the medical record does not show that any physician imposed any functional restrictions of Claimant or found him to be totally disabled. Indeed, the ALJ highlighted the lack of documentation in the treatment records of restrictions upon Claimant's functional capacity ever placed on Claimant. The ALJ also properly considered the Polaski factors in concluding that Claimant's subjective complaints of pain and discomfort are not supported by the objective medical evidence inasmuch as "the evidence does not indicate that the claimant received any medical treatment in 2004, 2005, or 2006." (Tr. 14). The ALJ listed facts from Claimant's hearing testimony regarding the Polaski factors and the medical record that reflected upon Claimant's ability to perform sedentary work such as the lack of pain relief medications and lack of ongoing medical treatment. Further, the ALJ pointed out other inconsistencies in the record that tended to militate against Claimant's credibility. See Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's testimony at the hearing, the absence of objective medical evidence of deterioration,

the absence of any doctor finding Claimant disabled or imposing any functional limitations, his failure to seek regular and sustained treatment, his delay in filing for disability benefits, and his stopping work due to being laid off.

Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform sedentary work. Under the regulations, sedentary work is work that involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like files, ledgers, and small tools. 20 C.F.R. § 404.15 67(a). Sedentary work also involves a certain amount of walking and standing. Id. The ALJ's determination does not contradict any of the medical evidence, and nothing else in the record detracts from his decision. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform a full range of sedentary work which requires occasionally walking and standing. Thus, the undersigned finds that substantial evidence supports the ALJ's finding that Claimant has the residual functional capacity to perform a full range of sedentary work. The ALJ thus concluded that Claimant could perform any of his past relevant work.

The undersigned finds Claimant's argument flawed inasmuch as the instant medical record does not support his claim of disability. The medical record is devoid of any physician finding Claimant disabled or limited in his ability to function. The medical records show that Claimant's pain problems started in November 2000, but he continued to perform his work as a retail sales manager until March, 2003. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See* Goff v. Barnhart, 421 F.3d 785, 793 (8th

Cir. 2005); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability). Indeed, at the hearing Claimant testified that he stopped working because he was laid off, not because of his impairments. Likewise, in the Disability Adult Report, Claimant indicated that his symptoms first started bothering him on November 12, 2000. but he continued to work without any job-related accommodations or reduced hours until March 1, 2003. (Tr. 109). Indeed, Claimant acknowledged that he was released from his job on March 2, 2003, due to pain and a disagreement with the owner. (Tr. 109). Accordingly, the ALJ cited how the record established that Claimant ceased work activity due to other reasons than impairment-related reasons as another factor in support of Claimant's ability to work. The ALJ also noted how Claimant did not file for disability benefits until June 2006, more than five years after his injury. The ALJ further noted that despite his allegations of persistent pain, Claimant has not received ongoing medical attention or treatment for his pain. Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints."). The lack of strong prescription pain medication supports the ALJ's findings. See Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999).

The ALJ considered the opinion of Raymond Booth, R.N. but found Mr. Booth to be not an acceptable medical source and gave no weight to his opinion regarding disability. (Tr. 15). The opinion at issue is embodied in a letter addressed "To whom it may concern," written by Mr. Booth on February 4, 2008. The ALJ did not give weight to the opinion inasmuch as the letter

was not completed by an acceptable medical source as required by the regulations. See Thibodeaux v. Astrue, 324 F. App'x 440, 445 (5th Cir. 2009) (per curiam) ("Only 'acceptable medical sources' can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight."). Under the regulations, a registered nurse is not considered an "acceptable medical source." See 20 C.F.R. § 404.1513(a)(listing acceptable medical sources and examples of "other" medical sources); SSR 06-3p. Further, Mr. Booth's opinion only offered observations of Claimant and was not supported by any medical evidence.

The ALJ next noted that the treatment gaps in the medical record undermine Claimant's credibility concerning his allegations of disabling pain and disabling impairments. Such gaps suggest that Claimant's subjective complaints of disabling pain are not entirely credible. See Siemers, 47 F.3d at 302 (citing Benskin v. Bowen, 830 F.2d 878, 884) (8th Cir. 1987) (holding that the "claimant's failure to seek medical treatment for pain" is a legitimate factor for an ALJ to consider in rejecting a claimant's subjective complaints of pain). "[T]he failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995). The treatment note dated June 17, 2003, Dr. Metzler noted how Claimant had not returned for treatment in almost eighteen months. Likewise, Claimant reported to Dr. Metzler how sitting relieved his pain although he testified otherwise at the hearing. See Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003); Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility). Further, the record is devoid of any medical records from July 2, 2003 until September 11, 2006. Seeking limited medical treatment is

inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991). In this matter, the record does not establish that Claimant did not seek medical treatment because of limited resources. Moreover, even assuming that Claimant's financial resources were insufficient, the record does not reflect that Claimant sought financial aid or treatment offered to indigents.

The substantial evidence on the record as a whole supports the ALJ's decision. See Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's testimony at the hearing, the absence of objective medical evidence of deterioration, the absence of any doctor finding Claimant disabled or imposing any functional limitations, his failure to seek regular and sustained treatment, medical noncompliance, and his ability to work until March 2003 when he was laid off from his job. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Next Claimant contends that the ALJ erred in failing to properly analyze the requirements

of his past relevant work. Specifically, Claimant argues that the ALJ erred by not making findings regarding the demands of his past relevant work. Claimant contends that the ALJ failed to cite in his decision the skill or the exertional levels of his past relevant work.

An ALJ has a duty to "fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." Sells v. Shalala, 48 F. 3d 1044, 1046 (8th Cir. 1995) (quoting Nimick v. Secretary of Health and Human Serv., 887 F.2d 864, 866 (8th Cir. 1989)). "A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his [or her] past work." Sells, 48 F.3d at 1046 (quoting Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991)). In Groeper, the Eighth Circuit held that an ALJ must make explicit findings on demands of the claimant's past work. Groeper, 932 F.2d at 1239.

Here, the ALJ found that in his work as a retail sales manager, Claimant had to occasionally walk and stand. The ALJ relied on Claimant's own description of his past duties in making these findings and further noted that Claimant stopped working because he was laid off. See Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (ALJ relied on claimant's own description of her past duties in making findings regarding the requirements of her past work); Riley v. Apfel, 1999 WL 758662 at *1 (8th Cir. Sept. 22, 1999) (unpublished per curiam) (affirming Commissioner's finding that the plaintiff could perform his past work where the plaintiff's description in his vocational report of the demands of his previous position was consistent with the ALJ's RFC findings). Furthermore, the record with regard to a claimant's

past work need not be "developed in full detail," as long as there is evidence that the past work involved activities that the claimant could perform. Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir. 1990). Accordingly, the ALJ properly determined that Claimant could perform his past relevant work as a retail sales manager as he performed it.

Therefore, for all the foregoing reasons,

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2009.